**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2018**

# In the Court of Appeals of Georgia

A17A1628. THOMPSON v. THE STATE.

MILLER, Presiding Judge.

Lonnie Thompson, Jr., was convicted of burglary (OCGA § 16-7-1 (a) (1980)), armed robbery (OCGA § 16-8-41 (a)), and aggravated assault (OCGA § 16-5-21 (a) (2006)) in connection with a home invasion he committed with three other individuals. He appeals from the denial of his motion for new trial, arguing that (1) his statement to police was not voluntary because it was given in exchange for a promise of probation; (2) the trial court plainly erred by failing to exclude this custodial statement resulting from an illegal detention; and (3) trial counsel was ineffective for failing to interview a key witness or move to suppress Thompson's custodial statement that resulted from an illegal detention. After a thorough review of the record, we conclude that the trial court properly found that Thompson's

confession was not made due to a promise of benefit and that trial counsel was not ineffective for failing to call a witness to testify. However, as to Thompson's claim that trial counsel was ineffective for failing to move to suppress his confession on the ground that it resulted from an illegal detention, we conclude that the trial court's order is insufficient for us to consider whether the motion to suppress would have been meritorious. Accordingly, we vacate the trial court's order on this issue and remand the case for further proceedings.

Viewing the evidence in the light most favorable to the verdict,[1] in the middle of the night of July 30, 2007, Thompson and three others broke into the home of Larry Bailey.[2] Bailey was asleep at the time, but he awoke when he heard the break in. The intruders demanded money and Thompson struck Bailey on the head with a hammer. After Bailey's wife gave the intruders the money, they left, and Bailey's wife called police.

Police investigating the robbery spoke with Thompson at his home before bringing him to the police station. At the station, two officers read Thompson his

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[2] None of the other suspects was charged or prosecuted for the home invasion.

2

*Miranda*[3] rights, which he waived. Thompson then gave a statement denying any involvement in the crimes. Thompson remained in custody overnight and, when he was questioned again the following morning, Thompson waived his *Miranda* rights and admitted to the armed robbery and burglary, but denied that he struck Bailey with a hammer.

Before the trial court admitted the confession at trial, it conducted a *Jackson-Denno*[4] hearing. Sergeant Taylor of the Upson County Sheriff's Office testified that he first interviewed Thompson at the station at 9:27 pm on August 2, 2007. He read Thompson his *Miranda* rights, and Thompson gave a statement denying that he committed the crimes. Thompson was held overnight, and the following morning Sergeant Taylor interviewed Thompson again at 8:47 am. Thompson waived his rights a second time and then admitted his involvement in the home invasion. Sergeant Taylor testified that no one made a promise of a lighter sentence or probation in exchange for Thompson's confession. Captain Hosley, who was present during the questioning, corroborated Sergeant Taylor's testimony. Thompson also

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

confirmed in writing that he was making the statement voluntarily and without the promise of any benefit.

Thompson testified at the *Jackson-Denno* hearing that Captain Hosley told him he could get 20 years of probation if he cooperated, and he only made his confession because of this promise. The trial court nonetheless found that Thompson's statement was given without any hope of benefit, specifically finding Thompson's testimony not credible. Accordingly, the trial court admitted Thompson's confession.

During his trial testimony, Sergeant Taylor read Thompson's confession into evidence. Thompson testified at trial, admitting entering the home, but denying that he struck Bailey. The jury convicted Thompson on all three counts with which he was charged.

In his first motion for new trial, Thompson alleged that his trial counsel was constitutionally deficient for failing to investigate his interrogations and call witnesses to corroborate Thompson's claim that he was promised probation in exchange for making a statement.

During two hearings on the motion for new trial, Thompson's cousin, Antonio McDowell, testified that he was present during Thompson's second interrogation and he heard Captain Hosley tell Thompson he would get probation if he told the truth.

4

According to McDowell, however, Captain Hosley never mentioned a specific amount of time for probation. Captain Hosley and Sergeant Taylor both testified that McDowell was not present during the second interrogation, and they reiterated that no one made any promise of probation in exchange for Thompson's confession.

Thompson testified that he told his attorney both that he was promised probation, and that McDowell witnessed the interrogation. Trial counsel, however, testified that Thompson never told him about any promise of probation or that anyone else was present during his interrogation. Indeed, trial counsel testified that Thompson specifically told him that no one else was present during the interrogation. Trial counsel stated that the first time he learned of the claim that McDowell was also present during the second interrogation was during the *Jackson-Denno* hearing.

The trial court denied the motion for new trial. Thereafter, counsel failed to timely file a direct appeal, and the trial court granted Thompson's motion for an out-of-time appeal. Thompson's new appellate counsel then filed an amended motion for new trial, adding a claim that trial counsel was ineffective for failing to move to

suppress the confession, and that his first appellate counsel was ineffective for failing to present evidence in support of this ineffective assistance claim.[5]

At two subsequent hearings on the amended motion for new trial,[6] new appellate counsel argued that Thompson's confession should have been suppressed because a confession obtained after an illegal detention is inadmissible, and the detention was illegal because there was no probable cause for Thompson's arrest prior to his statement. Counsel pointed to the booking and arrest reports showing that Thompson was arrested for armed robbery, burglary, and aggravated assault *before* his second interrogation in which he confessed.

Sergeant Taylor testified again, this time explaining that Thompson initially came to the station voluntarily and was arrested only after police determined that he had lied when he denied that he had asked McDowell to provide a false alibi for one

---

[5] Under Georgia law, after an out-of-time appeal is granted, appellate counsel may file an amended motion for new trial, and the trial court retains jurisdiction to consider this motion. *Ponder v. State*, 260 Ga. 841 (1) (400 SE2d 922) (1991). Once a defendant is granted permission to file an out-of-time appeal, he may raise new claims of ineffective assistance of counsel through an amended motion for new trial. See *Dawson v. State*, 302 Ga. App. 842, 843 (691 SE2d 886) (2010).

[6] At the conclusion of the first hearing, appellate counsel requested, and the court granted, a continuance to further investigate the basis for Thompson's arrest. At the second hearing, appellate counsel did not present any new evidence or witnesses, and the trial court heard argument on the motion.

of the other intruders. According to Sergeant Taylor, Thompson was arrested for making a false statement on this basis, although police later decided not to pursue that charge. Captain Hosley explained that the police could not obtain formal charges against Thompson on the night of his arrest for making a false statement because the magistrate judge was not available until the morning.

The trial court reinstated its initial ruling denying the motion for new trial and found that neither trial counsel nor first appellate counsel had provided ineffective assistance in failing to move to suppress Thompson's confession due to the unlawful detention. Specifically, the trial court found that Thompson's detention was lawful and any motion to suppress would not have been granted. Importantly, at no time in the two hearings or in its order did the trial court explicitly indicate the basis for its finding that the detention was lawful or make any express credibility determinations on the evidence. Thompson now appeals.

1. Thompson argues that his confession was inadmissible because it was made only upon the promise of probation. We disagree.

Under Georgia law, "[t]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit

or remotest fear of injury." OCGA § 24-3-50 (effective through Dec. 2012).[7] The term "slightest hope of benefit" refers to "promises related to reduced criminal punishment—a shorter sentence, lesser charges, or no charges at all." (Citation omitted.) *State v. Chulpayev*, 296 Ga. 764, 771 (2) (770 SE2d 808) (2015). This rule applies to any incriminating statements and is not limited to "confessions." *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008).

"It is the task of the trial court to determine whether a confession was voluntary, taking into account the totality of the circumstances. We will not disturb the trial court's factual and credibility determinations on appeal unless they are clearly erroneous." (Citation omitted.) *Jackson v. State*, 280 Ga. App. 716, 720 (2) (634 SE2d 846) (2006).

---

[7] Here, the trial occurred in 2008, prior to the effective date of Georgia's new evidence code. See Ga. L. 2011, p. 99, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date."). Nevertheless, the corresponding provision of Georgia's new Evidence Code tracks the language of § 24-3-50 of the old code. See OCGA § 24-8-824. See also *Bradshaw v. State*, 296 Ga. 650, 654 (2) (769 SE2d 892) (2015) (explaining that where the new Evidence Code includes a section that is not in the Federal Rules of Evidence and uses language "nearly identical" to that of the old code, this Court gives the new provision the same meaning as the old one).

Here, Thompson was read his *Miranda* rights before making his statement, he acknowledged and waived those rights, and he confirmed that he was making a statement voluntarily and that no one had made any promises in exchange for his statement. Both Sergeant Taylor and Captain Hosley testified that there was no promise of probation in exchange for Thompson's confession. Thompson disputed this, stating that Hosley promised that he would receive 20 years' probation if he made a statement. The trial court explicitly found Thompson's allegation not credible. We cannot say that this finding was clearly erroneous, and, accordingly, we must defer to the trial court's determination that Thompson was not promised a lesser sentence in exchange for his confession.

McDowell's testimony at the motion for new trial hearing does not dictate a different conclusion. Although McDowell testified that Captain Hosley promised probation, he also contradicted Thompson's claim that the promise included a specific term of probation. Thus, McDowell's testimony does not call into question the trial court's credibility findings and does not require us to conclude that Thompson's confession was involuntary on this basis. The officers' testimony that there was no offer of a lighter sentence, along with Thompson's written confirmation that the statement was made without a promise of a lighter sentence, although contradicted

by Thompson in his testimony, were sufficient for the trial court to conclude that Thompson's statements were not made due to a promise of benefit. See *Jenkins v. State*, 251 Ga. App. 76 (553 SE2d 378) (2001).

2. Thompson next argues that the trial court committed plain error by failing to exclude his confession because his arrest was made without probable cause or a warrant and, thus, was illegal.

We need not reach this enumeration because Thompson was tried in 2008, and at that time, plain error review was limited to unpreserved issues involving jury charges, a trial court's expression of opinion, and sentencing in a death penalty case. See *Ross v. State*, 296 Ga. 636, 639 n. 6 (769 SE2d 43) (2015). Thus, Thompson's failure to file a motion to suppress waived this challenge to his arrest.[8]

3. Finally, Thompson argues that trial counsel was ineffective for failing to move to suppress his confession on the ground that his detention was illegal, interview McDowell, and call McDowell as a witness at the *Jackson-Denno* hearing. We discern no error with respect to the claim related to calling McDowell as a witness. As to the failure to file a motion to suppress based on an illegal detention,

---

[8] We note that Thompson objected to the trial court giving a jury instruction on illegal detention because he did not contend that his detention was illegal.

10

however, we must vacate the trial court's order and remand for clarification of the trial court's order.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citation and punctuation omitted.) *Davenport v. State*, 316 Ga. App. 234, 239 (3) (729 SE2d 442) (2012).

a. *Interview and call McDowell as a witness*

Thompson cannot show that he was prejudiced by trial counsel's failure to interview and call McDowell as a witness at the *Jackson-Denno* hearing.

11

As discussed in Division 1, the trial court explicitly found Thompson's claim of a promise lacked credibility. Moreover, at the motion for new trial hearing, McDowell testified, and the trial court nonetheless reaffirmed its finding that Thompson's confession was not made upon the hope of benefit or promise of probation. In doing so, the trial court implicitly found that McDowell's testimony was not credible. In light of this, Thompson cannot show that the outcome would have been different had counsel interviewed McDowell prior to the *Jackson-Denno* hearing, and there is no merit to his claim of ineffective assistance of counsel on this ground.

*b. Motion to suppress*

Thompson contends that trial counsel should have, but failed to, move to suppress his confession because it was the result of an illegal arrest.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Richardson v. State*, 276 Ga. 548, 553 (3) (580 SE2d 224) (2003). "[F]ailure to pursue a futile motion does not constitute ineffective assistance." (Citation, punctuation and

footnote omitted.) *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003).

Thus, the issue before us is whether the motion to suppress – had one been filed – would have been meritorious. The answer to that question depends on whether Thompson was lawfully in custody at the time he confessed. We conclude that the trial court failed to make the requisite findings as to probable cause to enable us to evaluate whether Thompson was lawfully in custody.

"A warrantless arrest is constitutionally valid if the arresting officer has probable cause to believe the accused has committed or is committing an offense." (Citation and punctuation omitted.) *Brown v. State*, 278 Ga. 724, 727 (2) (609 SE2d 312) (2004). See also OCGA 17-4-20 (a) (2006) ("An arrest for a crime may be made by a law enforcement officer . . . without a warrant if the offense is committed in such officer's presence or within such officer's immediate knowledge. . . .").[9] "Probable cause exists if the arresting officer has reasonably trustworthy information that would allow a reasonable person to believe the accused committed a crime." (Citation

---

[9] Thompson cites the current version of § 17-4-20 to support his contention that a warrantless arrest was improper in this case. The relevant statutory language is essentially the same. Compare OCGA § 17-4-20 (2006) with OCGA § 17-4-20 (2013).

omitted.) *Brown*, supra, 278 Ga. at 727 (2). Moreover, "[t]he test of probable cause requires merely a probability—less than a certainty but more than a mere suspicion or possibility." (Citation omitted.) *Boykins-White v. State*, 305 Ga. App. 827, 831-832 (4) (701 SE2d 221) (2010).

Here, the officers testified that Thompson voluntarily went to the police station to be questioned about the home invasion. At around 9:27 pm, he was read his *Miranda* rights, which he waived. Thompson then denied any involvement in the home invasion. The following morning, police *Mirandized* Thompson again, after which Thompson waived his rights and confessed to his involvement in the home invasion.

Based on their conversation with McDowell, police believed Thompson had asked McDowell to provide a false alibi for one of the other suspects, and lied to police about doing so.[10] As a result, the State contends that the police had probable cause to, and did, arrest Thompson that night for making a false statement, thus making his confession the following morning the result of a legal detention.

---

[10] At trial, Thompson testified that he had not asked McDowell to lie – one of the other suspects did. In his confession, however, Thompson admitted that he asked McDowell to lie to police.

14

In contrast, Thompson argues that his detention was illegal, as he was not arrested for making a false statement. In support of this argument, he points to the arrest/booking report, which indicates that he was arrested at 1:57 am on August 3, 2007, for armed robbery, burglary, and aggravated assault – *before* he confessed to the home invasion.

At the hearing on the amended motion for new trial, Captain Hosley testified, under subpoena as the custodian of the jail records, that this record was Thompson's booking report. He nevertheless testified that Thompson had been arrested for making a false statement to police, and he did not offer any explanation for the discrepancy between his testimony about the arrest and the crimes indicated in the booking report.

After extensive argument regarding whether there was probable cause to arrest Thompson for making a false statement, and questions regarding the actual basis for Thompson's arrest, the trial court indicated that it was "inclined to deny" the motion for new trial. In a brief order, the trial court indicated that it found Thompson's detention was lawful and therefore, any motion to suppress would have been denied. The trial court did not indicate the basis for its conclusion that the detention was lawful.

As the question of whether counsel was constitutionally deficient rests on whether the motion to suppress would have been meritorious, we focus our review on the probable cause analysis. In doing so, we recognize that our review is limited. See *Williams v. State*, 301 Ga. 60, 61 (799 SE2d 779) (2017) (court of appeals cannot make additional factual findings as to probable cause beyond those contained in the trial court's order, and, where those are insufficient to enable appellate review, remand is warranted). We cannot make factual findings or substitute our determinations for those of the trial court. Id. at 62. Rather, this Court must focus on the facts found by the trial court in its order because the trial court sits as the finder of facts. Id.

In light of these constraints, we conclude that the trial court's decision concerning the motion to suppress lacks the express findings of fact necessary to enable our review on the issue of probable cause for Thompson's detention. See *Williams*, supra, 301 Ga. at 62. Indeed, the trial court made no express credibility findings in the face of disputed evidence regarding the basis for Thompson's arrest, and thus, we cannot tell if the trial court found that Thompson's arrest prior to his confession was for making a false statement or for armed robbery. These findings are critical to a determination on probable cause and the merit of any motion to suppress

16

based on the allegation that the detention was illegal, and we cannot address counsel's performance without them. Therefore, "[g]iven the uncertainty in the trial court's order regarding the basis for its ruling, [we] must vacate the [order and] . . . remand this case to the trial court for further clarification on the specific findings that form the basis for its legal conclusions." Id.

For the foregoing reasons, we conclude that (1) Thompson waived his right to directly appeal the failure to suppress his confession as the result of an illegal detention; (2) the trial court properly found that Thompson's confession was not made with the hope or promise of benefit; and (3) trial counsel was not ineffective for failing to call a witness to testify. As to Thompson's claim that his trial counsel was ineffective for failing to move to suppress his confession on the ground that it was the product of an illegal detention, however, the trial court's order is insufficient for us to consider whether the motion to suppress would have been meritorious. Accordingly, we vacate the trial court's order on this issue, and remand the case for further proceedings consistent with this opinion.[11]

---

[11] In light of our conclusion that remand is required, we do not consider Thompson's claim that the cumulative effect of the alleged errors established prejudice.

*Judgment affirmed in part, vacated and remanded in part. Reese, J. concurs.*

*Doyle, P. J., concurs in Divisions 1, 2, and 3(a) and dissents in Division 3 (b).\**

**\*DIVISION 3 (b) OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A17A1628. THOMPSON v. THE STATE.


DOYLE, Presiding Judge, dissenting.

Although I fully concur with Divisions 1, 2, and, 3 (a), I respectfully dissent

to Division 3 (b) of the majority opinion because the evidence supports the trial

court's conclusion that trial counsel was not ineffective for failing to move to

suppress Thompson's statement on the basis that it was the result of an illegal arrest.

I note at the outset that this question arose in the context of Thompson's claim

of ineffective assistance of counsel under *Strickland v. Washington*.[1] In that context,

---

[1] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

2

[e]ven when the trial court fails to make specific findings on an ineffective assistance of counsel claim, remand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in *Strickland*. When reviewing a trial court's ruling on a claim of ineffective assistance of counsel, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[2]

This is not a case in which the trial court made no specific findings at all. Instead, the trial court made the following findings, after considering the evidence and argument adduced at the pre-trial *Jackson-Denno* hearing, the trial, and the motion for new trial hearing: (1) Thompson had been properly advised of his *Miranda*[3] rights, and (2) he was in lawful custody at the time he gave his statement to law enforcement. Because there was evidence to support these findings, we must accept them, even if there is evidence to dispute them.[4]

In light of these findings, the trial court was authorized to conclude, as it did, that a motion to suppress Thompson's statement would not have been successful.

---

[2] (Citations and punctuation omitted.) *Diaz v. State*, 343 Ga. App. 19 (806 SE2d 1) (2017), quoting *Burrell v. State*, 301 Ga. 21, 24 (2) (799 SE2d 181) (2017).

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[4] See *Diaz*, 343 Ga. App. at 19.

3

Having done so, the trial court adequately addressed Thompson's claim for ineffective assistance of counsel.

I disagree that we need to remand the case for more explicit findings under the *Jackson-Denno* framework[5] because the record is sufficient for us to determine that the trial court did not apply the wrong legal standard or burden of proof, and the trial court explicitly held that Thompson had been properly *Mirandized* and was lawfully in custody. Although there is evidence disputing the lawfulness of his custody, the trial court found otherwise. Because conflicts in the evidence on a motion to suppress a custodial statement are for the trial court to resolve,[6] that finding does not demonstrate that the court clearly erred as a factual matter or misapplied the law. Accordingly, remand is not required, and I would affirm the judgment of the trial court.

---

[5] See, e.g., *Bryant v. State*, 268 Ga. 664, 666 (6) (492 SE2d 868) (1997), citing *Berry v. State*, 254 Ga. 101, 104-105 (1), n. 6 (326 SE2d 748) (1985).

[6] See *Gunn v. State*, 342 Ga. App. 615, 622-623 (2) (804 SE2d 118) (2017) ("[U]nless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.").